The document below is hereby signed.

Signed: April 8, 2013



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

```
                UNITED STATES BANKRUPTCY COURT
                 FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
TRIGEE FOUNDATION, INC.,       )   Case No. 12-00624
                               )   (Chapter 11)
            Debtor.            )   Not for publication in
                               )   West's Bankruptcy Reporter.
```

<u>MEMORANDUM DECISION RE MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY</u>

Blackburne and Brown Mortgage Fund I and Blockacre Enterprises, L.L.C. have filed motions for relief from the automatic stay with respect to the debtor's real property.[1] Blackburne seeks relief from the automatic stay under 11 U.S.C. § 362(d)(3). Blockacre, which purchased tax sale certificates regarding the real property, and desires to commence litigation to enforce those tax sale certificates, has piggybacked on

---

[1] The parties agree that this is a proceeding that the bankruptcy court is authorized to hear and decide.

Blackburne's request for relief under § 362(d)(3).[2]  The debtor opposes the motions.  KH Funding Co., a junior lienor, has opposed Blackburne's motion insofar as it requests an outright lifting of the stay.  KH suggests:

> as an alternative to the relief requested in the Motion, that, to the extent that the Debtor consents, (a) the Debtor promptly retain an agent to market the Properties, (b) the Debtor be permitted approximately 90 days to effectively market the Properties and secure bid and auction procedures from the Court, and (c) at the conclusion of the marketing period, there ensue within 30 days an auction sale approval hearing before this Court.

I

The debtor, Trigee Foundation, Inc., commenced this case on September 13, 2012, by filing a voluntary petition.  The parties agree that the case is a "single asset real estate" case, and that, for the debtor to defeat a request for relief from the automatic stay under § 362(d)(3), the debtor was required to (i) file a plan within 90 days of the commencement of the case that "has a reasonable possibility of being confirmed within a

---

[2] Blockacre has additionally sought relief from the automatic stay for cause under § 362(d)(1) based on the statute of limitations for it to pursue enforcement of its tax sale certificates, and also seeks relief from the automatic stay based upon lack of equity in the property (implicitly invoking 11 U.S.C. § 362(d)(2)).  Blockacre has failed to establish that there is no equity in the property, and 11 U.S.C. § 108(c) protects it with respect to commencing an action to enforce its tax sale certificates. If, however, Blackburne is entitled to relief from the automatic stay under § 362(d)(3), Blockacre should be allowed to proceed with enforcement of its tax certificates if Blackburne goes through with a foreclosure sale. It has established cause to that extent.

reasonable time;" or (ii) commence making certain monthly payments to Blackburne.[3]

The debtor filed a plan by the required deadline of December 12, 2012, but it did not commence making payments to Blackburne. Accordingly, the debtor must show that its plan "has a reasonable possibility of being confirmed within a reasonable time" if it is to defeat Blackburne's motion.

Blackburne contends that relief from the automatic stay under § 362(d)(3) is appropriate because:

> the Plan is not confirmable within a reasonable period of time because the Debtor did not file (and still has not filed) a disclosure statement. Clearly, until a disclosure statement is filed and approved, the confirmation process cannot proceed. The intent of Congress in enacting 11 U.S.C. § 362(d)(3) was **not** to allow a debtor to file a mere place-holder plan on the last day of the 90-day period, to hold creditors hostage and not commence the payment of interest as required by 11 U.S.C. § 362(d)(3).

Motion at ¶ 13(D). The debtor responds that the Bankruptcy Code and Bankruptcy Rules did not impose a deadline for filing a disclosure statement. This argument, however, misses the point that the debtor's failure to file a disclosure statement has resulted in the confirmation process being stalled. This case

---

[3] The amount of the payments must be "in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate[.]" Blockacre's rights did not arise from a contract, and, accordingly, it appears that Blockacre is entitled to relief from the automatic stay only if cause will exist under § 362(d)(1) upon Blackburne's obtaining relief from the automatic stay under § 362(d)(3).

has been pending for almost 7 months.  The debtor's exclusive right to file a plan has expired because the debtor did not obtain acceptance of a plan within 180 days after the commencement of the case.  Moreover, in a disclosure statement, the debtor is required to provide creditors information that would enable them to make an informed judgment about the plan.  This ordinarily requires the submission of projections showing the ability of the debtor to make plan payments so that the creditors can evaluate the feasibility of the plan.  In turn, this means that in evaluating whether the debtor's plan has a reasonable possibility of being confirmed within a reasonable time, no disclosure statement is before the Court to assist it in making that determination.  Instead, the court was left with sketchy (as in shallow) testimony of an officer of the debtor that came nowhere close to providing the type of information that a disclosure statement would be required to provide.  For example, testimony was presented regarding whether cash flow would suffice to pay allowed secured claims, but the amount of administrative claims in the case was not addressed.

   The debtor further responds that the debtor needed additional time to stabilize its operations to the point of a substantial positive cash flow before it could file a disclosure statement based on data that confirmed its ability to carry out a plan.  That argument fails to carry the day.  Without a

disclosure statement on file, the debtor made only a sketchy presentation of how it could proceed to confirmation of a plan, and it has delayed having a disclosure statement being filed which is a first step in proceeding to confirmation.

Of course, what is a reasonable time to obtain confirmation of the plan, when no disclosure statement has been filed, will be affected by the degree to which the possibility of the plan being confirmed approaches being not just a reasonable possibility but instead a near certainty. If it is virtually certain that a plan will be confirmed promptly, that might permit the court to determine that a plan will be confirmed within a reasonable time. For example, if the debtor were to have presented evidence that it had only a few days ago received a $1 million equity infusion that would clearly make a plan feasible, with there being no uncertainties regarding the debtor's ability to file a disclosure statement promptly to obtain confirmation of a plan, the court could conclude that this change in circumstances warrants concluding that the virtual certainty of the debtor having the ability to obtain confirmation of a plan, with no bumps in the road, means that the court should treat that plan as being confirmable within a reasonable time.

Here, in contrast, there is no degree of certainty that a plan will be promptly confirmed. Indeed, the evidence suggests that there will be substantial bumps in the road.

First, the debtor is counting on ongoing renovations to put apartments into rentable condition and thereby to achieve the point that it can carry out its plan.  The debtor, however, has no source for doing renovations other than cash collateral, and it has in place no order now permitting it to use cash collateral.  The debtor did not show that it would be able to have its operations at the point that its plan will be feasible if it has no source before a confirmation hearing with which to make renovations.  It is no answer that the debtor could file a motion for further use of cash collateral, as that inevitably will result in delay that is attributable solely to the debtor's failure earlier to seek such relief.

Second, the existing cash collateral order, which has expired, required the debtor to put aside escrows for taxes, but the debtor has fallen well short of placing in escrow the required amounts.  Instead, the debtor proceeded to use cash collateral to make renovations.  This suggests that the debtor's attempts to obtain a further cash collateral order will be contested on the basis of the debtor's untrustworthiness.  Moreover, it is another bump in the road that suggests that the court can expect further bumps in the road that will prevent this case from proceeding reasonably promptly to confirmation of a plan.

Third, the debtor's plan failed to place the secured claims

of the District of Columbia in a class.  If there had been a disclosure statement hearing, this shortcoming would have been addressed by now.  Instead, it will have to be addressed only later via amendment of the plan, thereby injecting further unnecessary delay into the case.[4]

Finally, the existing cash collateral order required the debtor to file its plan by December 12, 2012.  In other words, the parties agreed that the debtor would not have the right to seek an enlargement of the deadline under § 362(d)(3).  The parties contemplated that the debtor as of December 12, 2012, would be required to have a plan in place that has a reasonable possibility of being confirmed.  That is to say, the first 90 days of the case was the breathing space in which the debtor agreed to have its operations in place for purposes of having a plan in place that could be confirmed within a reasonable period of time.  Decisions under § 362(d)(2) recognize that during a debtor's exclusivity period, a debtor is entitled to breathing space and is not required to have all of its ducks in a row in moving towards having in prospect a confirmable plan, but recognize that once the debtor's exclusivity period has expired,

---

[4] I need not decide whether the filing of an amended plan here, beyond the deadline of § 362(d)(3), necessarily would compel a finding that a plan has not been filed within the deadline for which there is a reasonable possibility of being confirmed.  A court arguably can confirm a plan with modifications agreed to at the confirmation hearing.

7

the debtor is subject to a higher burden of showing that a confirmable plan is reasonably in prospect.  Here, the parties agreed that the debtor would have only a 90-day breathing space, and would not have the right to seek an enlargement of the deadline under § 362(d)(3).  Moreover, in contrast to § 362(d)(2), which does not require that an actual plan be on file in order for the debtor to show that a confirmable plan is reasonably in prospect, § 362(d)(3) requires that a plan have been filed within the 90 days and that the debtor show a reasonable possibility of *that* plan being confirmed within a reasonable period of time.  We are now almost four months past the filing of the plan, yet no disclosure statement has been filed, a step in the time-table for getting a plan confirmed.  The debtor's delay is unreasonable, and has deprived the court of assistance to assess whether there is a reasonable possibility that its plan can be confirmed.

For all of these reasons, I conclude that the debtor has not shown that confirmation of a plan will ensue within a reasonable period of time.  Relief under § 362(d)(3) is appropriate.

                                II

The court has discretion, however, to condition the automatic stay instead of lifting it outright.  *In re The Terraces Subdivision, LLC*, 2007 WL 2220448 (Bankr. D. Alaska Aug. 2, 2007); *Riggs Bank, N.A. v. Planet 10, L.C. (In re Planet 10,*

*L.C.)*, 213 B.R. 478, 481 (Bankr. E.D. Va. 1997).  Blackburne concedes that for purposes of its liens (and disregarding junior liens) there is equity in the properties securing its liens.  Although § 362(d)(3) does not require a showing that the property at issue lacks equity, the presence of equity protecting a creditor's lien is a factor to take into account in fashioning appropriate relief under § 362(d)(3).  As a junior lienor, KH has requested the court to modify the stay by providing that the debtor be given a deadline to sell the properties.  I am not confident that the debtor would pursue that option.  However, the debtor's exclusivity period has expired.  KH can file a plan calling for a sale of the debtor's properties. Such a plan usually can be confirmed relatively quickly.

By setting a deadline to achieve confirmation of a liquidation plan, absent which Blackburne will be allowed to proceed with a foreclosure sale, KH's interests will be protected but Blackburne will have certainty that it will face no further delay.  This comports with the purpose of § 362(d)(3), which was added to "ensure that the automatic stay provision [was] not abused, while giving the debtor the opportunity to create a workable plan of reorganization."  *NationsBank, N.A. v. LDN Corp. (In re LDN Corp.)*, 191 B.R. 320, 326 (Bankr. E.D. Va. 1996) (citing S. Rep. No. 168, 103rd Cong., 1st Sess. (1993)).  But where "debtors with little hope of successfully reorganizing

9

delay the bankruptcy process while secured creditors are left helplessly on the sidelines," § 362(d)(3) provides relief. *Id.* The debtor has not shown that there is a reasonable possibility that it can achieve confirmation of its plan, allowing it to retain the properties, within a reasonable period of time. A liquidation plan is different, as it will call for a sale of the properties. Moreover, in enacting § 363(d)(3) "Congress was motivated by a desire to accord relief . . . where the owner of an encumbered building is attempting to avert loss of his building to his major lender who is grossly undersecured . . . ." *In re Kkemko, Inc.*, 181 B.R. 47, 51 (Bankr. S.D. Ohio 1995). Blackburne is not an undersecured creditor, and that is significant in determining whether modification of the stay instead of an outright lifting of the stay is the appropriate remedy. *See In re Planet 10, L.C.*, 213 B.R. at 481. The relief I am fashioning will assure that Blackburne is not left helplessly on the sidelines and will assure that junior lienors are given the opportunity to utilize the tools of chapter 11 to pursue an orderly sale by promptly obtaining confirmation of a liquidation plan that avoids the vagaries of a nonjudicial foreclosure sale.

I will thus modify the automatic stay to provide that KH shall have 14 days from April 8, 2013, within which to file a plan calling for a sale of the debtors' properties, with it to

have 90 days within which to obtain confirmation of such a plan. If it fails to file a plan or obtain confirmation of a plan within those deadlines, relief from the stay will be in effect to permit Blackburne to proceed to a foreclosure sale.

Blockacre is entitled to relief from the stay to initiate litigation to enforce its tax sale certificates if Blackburne becomes entitled to proceed, and does proceed, to a foreclosure sale.

                              III

An order will follow.

                                        [Signed and dated above.]

Copies to: Recipients of e-notification.