The document below is hereby signed.

Signed: February 10, 2017



_S. Martin Teel Jr._

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                           )
                                )
TRIGEE FOUNDATION, INC.,        )      Case No. 12-00624
                                )      (Chapter 11)
                Debtor.         )      Not for publication in
                                )      West's Bankruptcy Reporter.

<u>MEMORANDUM DECISION RE CREDITOR'S MOTION TO VACATE FEE ORDER</u>

On December 7, 2016, Nancy A. Durant, M.D., filed a motion

(the *"Motion to Vacate"*) (Dkt. No. 517) in the above-captioned

bankruptcy case seeking to vacate the *Order Granting Final

Application for Approval of Compensation for Lerch, Early &

Brewer for the Period May 2013 Through June 2013* (the *"Fee

Order"*) (Dkt. No. 384).  Three creditors joined in the *Motion to

Vacate*.  *See* Dkt. Nos. 27, 29-30.  Both Lerch, Early & Brewer,

LLC ("Lerch Early"), and Jeffrey M. Sherman opposed the *Motion to

Vacate*.  *See* Dkt. No. 578.  The court issued an oral decision at

the hearing on the motion to vacate that was held on January 26,

2017, and soon thereafter entered a written order denying Dr.

Durant's Motion to Vacate and denying the other creditors'
joinders in that motion. *See* Dkt. No. 541.  This *Memorandum
Decision* supplements and amends, to the extent of any
inconsistency, the court's oral decision of January 26, 2017.

I

DR. DURANT LACKS STANDING TO BRING THE MOTION

Pursuant to 11 U.S.C. § 1101, the debtor in the above-
captioned chapter 11 bankruptcy case, Trigee Foundation, Inc.
("Trigee"), served as a debtor in possession from the
commencement of the case in 2012 through its dismissal on
September 10, 2014. The Clerk closed the case on October 14,
2014.  On March 2, 2016, Trigee filed a malpractice action in the
Superior Court of the District of Columbia (captioned *Trigee
Foundation, Inc. v. Lerch, Early & Brewer, Chtd., et. al*, Case
No. 2016 CA 001511 M) against Lerch Early and Sherman, who had
represented Trigee for the duration of the bankruptcy proceedings
first as an attorney of Lerch Early and then as an individual
practitioner.  Lerch Early and Sherman then removed the
malpractice action to this court on May 23, 2016.  Trigee's
malpractice action against both parties was docketed as an
adversary proceeding in this court and the court eventually ruled
that Trigee's malpractice action was barred by the res judicata
or collateral estoppel effect of the *Fee Order*.  *See* Adv. Pro.
No. 16-10025, Dkt. Nos. 19-20.

2

The bankruptcy case itself remained a dismissed case. On July 19, 2016, this court entered a *Memorandum Decision and Order Granting Motion to Reopen for Purposes of Entertaining Removed Civil Action*, ruling that "[t]he reopening of the case does not amount to vacating the order of dismissal, and vacating the order of dismissal is not required in order to reopen the case." *See* Dkt. No. 497, at 3; *In re Trigee Found., Inc.*, No. 12-00624, 2016 WL 3971734, at *3 (Bankr. D.D.C. July 19, 2016).

After the case was reopened, Trigee filed a Fed. R. Civ. P. 60(b) motion to vacate the *Fee Order*. *See* Dkt. No. 500. The court denied that motion as untimely by an order entered on October 25, 2016. *See* Dkt. No. 510. Trigee did not appeal that order. On December 7, 2016, Dr. Durant filed her *Motion to Vacate*. *See* Dkt. No. 517.

Until Trigee's chapter 11 bankruptcy case was dismissed, under 11 U.S.C. §§ 1101(1) and 1107(a), as a debtor in possession, Trigee remained in possession of the bankruptcy estate throughout the proceedings and was vested with the powers of a trustee acting on behalf of the estate. Upon the dismissal of Trigee's bankruptcy case, there was no longer a bankruptcy estate and Trigee therefore ceased being a debtor in possession. At that time, the property of the estate revested in Trigee pursuant to 11 U.S.C. § 349(b)(3).

Because the bankruptcy case itself remains dismissed, the property of the estate remains revested in Trigee under 11 U.S.C. § 349(b)(3). It remains so despite the reopening of the case because the order reopening the case did not vacate the dismissal order. Accordingly, any unpaid balance of the amounts owed pursuant to the *Fee Order* must be paid from the debtor's assets, not from the assets of a bankruptcy estate. Similarly, any right to bring a claim on behalf of the estate for excessive attorney's fees revested in Trigee upon dismissal of the bankruptcy case and remains the property of Trigee now. Any recovery of excessive fees now would be by Trigee in its own right, not by Trigee acting in a fiduciary capacity as a debtor in possession on behalf of a bankruptcy estate.

Thus, Trigee had standing to move to vacate the *Fee Order* in its own right, not as a debtor in possession exercising the powers of a trustee under 11 U.S.C. § 1107(a) and representing the interests of a bankruptcy estate. If Trigee's motion to vacate the *Fee Order* had succeeded, Trigee would have had the right to recover the excessive fees from the attorneys and to refuse to pay the unpaid balance. Moreover, if the court had vacated the *Fee Order,* the *Fee Order* arguably would have no res judicata (claim preclusion) or collateral estoppel (issue preclusion) effect, in which case Trigee would no longer be

4

barred from pursuing a malpractice claim against Lerch Early and against Sherman on those bases.

Turning to the issue of Dr. Durant's standing to move to vacate the *Fee Order*, under 11 U.S.C. §§ 330(a)(1) and 1109(b) and Fed. R. Bankr. P. 2002(a)(6), Dr. Durant had standing to object to the fee application that led to the *Fee Order* during the pendency of the case. Moreover, during the pendency of the case, Dr. Durant had standing to seek to vacate the *Fee Order* if she wished to challenge the compensation awarded to Lerch Early or to Sherman based on alleged noncompliance with the standards of 11 U.S.C. § 330(a). An argument could be made that Dr. Durant, as a creditor of Trigee, retained standing to seek to vacate the *Fee Order* even after the bankruptcy case was dismissed. As the court recognized in reopening Trigee's bankruptcy case:

> [I]t is inherent in 11 U.S.C. § 329(b) (dealing with the review of the reasonableness of the compensation of a debtor's attorney) and 28 U.S.C. § 1334(e)(2) (vesting the court with exclusive jurisdiction over 11 U.S.C. § 327 issues) that the court retains jurisdiction *even after dismissal of a bankruptcy case* to review the reasonableness of attorney compensation relating to that case to assure that a debtor has not been charged unreasonable fees, and to consider the adequacy of an attorney's compliance with 11 U.S.C. § 327.

*In re Trigee Found., Inc.*, No. 12-00624, 2016 WL 3971734, at *2 (emphasis added). Arguably, that standing was not lost just because, after dismissal of the case, any vacating of the *Fee*

5

*Order* would directly benefit Trigee, and only indirectly benefit Dr. Durant as a creditor of Trigee.

However, 11 U.S.C. § 1109(b) confers standing on creditors in order to protect creditors with respect to the disposition of the res being administered in the case and, once the case is dismissed, the res is no longer being administered in a bankruptcy case and the rationale for § 1109(b) standing might disappear. *See In re Jas. Wilson* Assocs., 965 F.2d 160, 169 (7th Cir. 1992) ("[E]veryone with a claim to the res has a right to be heard before the res is disposed of since that disposition will extinguish all such claims."). In this case, the res has been disposed of via a dismissal of the case, with the result that the property of the estate revested in Trigee pursuant to 11 U.S.C. § 349(b)(3). Thus, as the owner of the property of the estate, Trigee, not Trigee's creditors, is arguably the only entity with standing to seek to vacate the *Fee Order* as affecting its rights outside of bankruptcy.

While the bankruptcy case was still active, creditors like Dr. Durant would have had standing to bring an action challenging fee awards because if such fee awards had been vacated, any excessive fees would have been recovered by the bankruptcy estate rather than by Trigee in its own right. However, now that the bankruptcy case has been dismissed, the vacating of any fee award would result in the recovery of excessive fees by Trigee in its

own right and therefore would only indirectly benefit Dr. Durant
as a shareholder and creditor of Trigee.  That indirect benefit
alone does not suffice to give her standing, for a creditor of a
corporation ordinarily does not have standing to pursue a claim
of the corporation to recover property or to defend against a
claim against the corporation.[1]  Dr. Durant did not show that she
has been authorized to pursue a motion to vacate the *Fee Order* in
a derivative capacity, on behalf of Trigee.  Besides, Trigee
already unsuccessfully pursued a motion to vacate the *Fee Order*.

It is likely that Dr. Durant has pursued her *Motion to
Vacate* in order to assist Trigee in pursuing its malpractice
claim against Lerch Early and Sherman.  Trigee's malpractice
claim against both parties revested in Trigee upon the dismissal

---

[1]   *See Labovitz v. Wash. Times Corp.*, 172 F.3d 897, 902
(D.C. Cir. 1999) (explaining that guarantors of corporate debt,
as creditors in or outside of the bankruptcy action, generally
lack standing to sue when they do not suffer an "injury
independent of the firm's" because they are not the real "party
in interest" and their claims are derivative (quoting *Mid-State
Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1336-
37 (7th Cir. 1989)).  See also *Free Access & Broad. Telemedia,
LLC v. FCC*, No. 15-1346, 2016 WL 4791883, at *2 (D.C. Cir. June
28, 2016) ("[C]ourts bar suits by creditors . . . 'unless the
alleged misconduct causes harm to them separate and distinct from
the injury' to the corporation." (quoting *Pagan v. Calderon*, 448
F.3d 16, 29 (1st Cir. 2006))); *Warren v. Mfrs. Nat'l Bank of
Detroit*, 759 F.2d 542, 544 (6th Cir. 1985) (ruling that a
shareholder and creditor of a corporation had no standing to
bring a RICO action in his individual capacity for what in
actuality were injuries sustained by the corporation).  This is
not a case in which Dr. Durant points to an injury she has
sustained that is "'distinct from any injury to the corporation
itself.'"  *See Labovitz*, 172 F.3d at 901 (quoting Cowin v.
Bresler, 741 F.2d 410, 415 (D.C. Cir. 1984)).

of the case and the court has already rejected Trigee's attempt to raise its malpractice claims now, ruling in the adversary proceeding (Case No. 16-10025, Dkt. Nos. 19-20), that the claims are barred by the res judicata or collateral estoppel effect of the *Fee Order*.  If the court vacated the *Fee Order*, the *Fee Order* would no longer have res judicata or collateral estoppel effect. The court's denial of Trigee's subsequent motion to vacate the *Fee Order* (Dkt. No. 510) renders Trigee incapable of bringing its malpractice claims against Lerch Early and Sherman.  Allowing Dr. Durant to pursue her *Motion to Vacate*, acting in effect as a surrogate for Trigee, would effectively allow Trigee to have a second opportunity to seek to vacate the *Fee Order* after the court rejected its first attempt to do so.

Nevertheless, it is easy to imagine circumstances in which a court might be tempted to rule that a creditor has standing to seek to vacate erroneous fee awards after a case has been

dismissed.[2]  The standing issue is a close call, and was not
briefed.  Accordingly, rather than dismissing Dr. Durant's *Motion*
based solely on lack of standing, I will address the merits of
the *Motion* as though Dr. Durant had standing.

II

DR. DURANT'S MOTION IS NOT TIMELY UNDER
FED. R. BANKR. P. 9023 AND FED. R. CIV. P. 59

Dr. Durant's *Motion to Vacate*, filed on December 7, 2016,
invokes Fed. R. Civ. P. 59, which is made applicable to
bankruptcy cases by Fed. R. Bankr. P. 9023 with the modification
that the motion to vacate a judgment must be filed no later than
14 days after entry of the judgment.  Dr. Durant can only obtain
relief from the *Fee Order* by way of Fed. R. Civ. P. 9024, made

---

[2]  For example, imagine a case in which a debtor in
possession's attorney was ineligible to be authorized to
represent the debtor in possession because of a conflict of
interest based on simultaneously representing the interests of
management of the debtor corporation that were adverse to the
interests of the estate, but failed to disclose that connection
with management to the court.  Imagine further that the court
authorized the attorney to represent the debtor in possession
(without the conflict having been disclosed to the court) and the
attorney was, pursuant to court order, paid substantial fees out
of the estate for work when (unbeknownst to creditors) the
conflict of interest adversely affected the quality of the
professional's representation of the estate.  Imagine next that
the case was then dismissed.  The management of the debtor
corporation might be unlikely to sue to vacate the fee order.  A
court might view creditors (who, after the dismissal, learned of
the conflict of interest) as the parties who were really the ones
injured by the failure to disclose the conflict of interest and
by the payment of substantial fees.  However, in such a case,
such creditors must seek to sue on behalf of the corporation via
a derivative action if they are to have standing to move to
vacate the fee order.

applicable by Fed. R. Bankr. P. 9024.  The *Fee Order* was entered

on February 4, 2014--more than two years before Dr. Durant moved

to vacate that order.  *See* Dkt. No. 384.  It is therefore far too

late for Dr. Durant to pursue a Rule 59 motion.  Regardless of

when Dr. Durant learned of the attorneys' alleged malpractice or

misconduct, it is too late for her to seek to have the *Fee Order*

vacated under Rule 59.

III

RELIEF UNDER FED. FED. R. CIV. P. 60(b)(3) IS TIME-BARRED

Dr. Durant's *Motion to Vacate* also invokes Fed. R. Civ. P.

60(b)(3) as a basis for vacating the *Fee Order*.  Rule 60(b)(3)

permits a court to vacate an order for "fraud (whether previously

called intrinsic or extrinsic), misrepresentation, or misconduct

by an opposing party[.]"  Under Fed. R. Civ. P. 60(c)(1), an

order may only be vacated under Fed. R. Civ. P. 60(b)(3) if the

motion to vacate that order was made within one year of the order

being entered.  Thus, because Dr. Durant's *Motion to Vacate* was

filed in December 2016, more than a year after entry of the *Fee

Order* in February 2014, the *Fee Order* cannot be vacated under

Fed. R. Civ. P. 60(b)(3)

10

IV

DR. DURANT HAS NOT SHOWN AN ENTITLEMENT TO RELIEF
UNDER FED. R. CIV. P. 60(b)(6)

Dr. Durant also invokes Fed. R. Civ. P. 60(b)(6) as a basis
for vacating the *Fee Order*. She points to the Fed. R. Bankr. P.
2014(a) verified statement executed by Sherman as part of the
Trigee's application to employ Sherman and Lerch Early, the firm
for which Sherman worked at the time. In that statement, Sherman
failed to disclose that, prior to the filing of the case, he and
another Lerch Early attorneys had represented an entity that was
a creditor in the case. This alleged misrepresentation fits
within the grounds for relief from a final judgment, order, or
proceeding enumerated in Fed. R. Bankr. P. 60(b)(3), dealing with
"fraud (whether previously called intrinsic or extrinsic),
misrepresentation, or misconduct by an opposing party." A party
may only seek relief under Fed. R. Bankr. P. 60(b)(6) citing "any
other reason that justifies relief[,]" meaning any other reason
not already enumerated in the preceding subsections. Because the
alleged misrepresentation would be grounds for relief under Rule
60(b)(3), the misrepresentation cannot be a ground for relief
under Rule 60(b)(6). "To interpret 60(b)(6) any other way would
make the time limitations on motions under 60(b)(1)-(3)
meaningless." *Baltia Air Lines, Inc. v. Transaction Mgmt., Inc.*,
98 F.3d 640, 642 (D.C. Cir. 1996).

11

V

DR. DURANT'S MOTION DOES NOT ALLEGE FRAUD UPON
THE COURT WITHIN THE MEANING OF FED. R. CIV. P. 60(d)(3)

Under Fed. R. Civ. P. 60(d)(3), Rule 60 "does not limit a
court's power to . . . set aside a judgment for fraud on the
court."[3]  However, in her *Motion to Vacate*, Dr. Durant did not
raise Fed. R. Civ. P. 60(d)(3) as a basis for vacating the *Fee
Order*.

VI

DR. DURANT'S EVIDENCE DOES NOT SHOW A FRAUD UPON THE COURT
AS REQUIRED UNDER FED. R. CIV. P. 60(d)(3)

Even if Dr. Durant's *Motion to Vacate* could be viewed as
contending that there was a fraud upon the court, Dr. Durant
failed to show that the *Fee Order* was obtained via a fraud upon
the court.  While employed at Lerch Early, Sherman and John
Tsikerdanos were the principal attorneys who represented Trigee
in its bankruptcy case.  Before they were employed at Lerch
Early, both Sherman and Tsikerdanos were employed by one of

---

[3]  At least one court holds that such a motion must be filed
within a reasonable time of discovery of the fraud.  *See Apotex
Corp. v. Merck & Co., Inc.*, 507 F.3d 1357, 1361 (Fed. Cir. 2007).
However, precedent binding on this court holds that "[a] court
may at any time set aside a judgment for after-discovered fraud
upon the court."  *Dausuel v. Dausuel*, 195 F.2d 774, 775 (D.C.
Cir. 1952) (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
322 U.S. 238, 244 (1944)).  *See* also 11 Wright, Miller & Kane,
*Federal Practice & Procedure: Civil* § 2870 (3d ed. 2012) ("There
is no time limit on setting aside a judgment on [the ground of
fraud upon the court], nor can laches bar consideration of the
matter.").

Trigee's creditors, Blackburne and Brown Mortgage Fund I
("Blackburne"), and sent dunning letters to Trigee in the course
of their employment for Blackburne.

As a basis for vacating the *Fee Order*, Dr. Durant pointed to
Sherman's failure to disclose the prior representation of
Blackburne in his Rule 2014(a) statement. As a matter of
speculation, it is entirely possible that if the Rule 2014(a)
statement had disclosed the prior connection to a creditor in the
case, Trigee might have decided not to employ the attorneys or
their firm or Dr. Durant, as a creditor, might have objected to
the employment. However, misleading Trigee and Dr. Durant would
not alone amount to a "fraud on the court" as that term is used
in Rule 60(d)(3).

"Fraud on the court is not your 'garden-variety fraud.'"
*Fox ex rel. Fox v. Elk Run Coal Co.*, 739 F.3d 131, 135 (4th Cir.
2014) (quoting *George P. Reintjes Co. v. Riley Stoker Corp.*, 71
F.3d 44, 48 (1st Cir. 1995)). As noted in *Baltia Air Lines,
Inc.*, 98 F.3d at 642-43:

> "Fraud on the court . . . is fraud which is directed to
> the judicial machinery itself and is not fraud between
> the parties or fraudulent documents, false statements or
> perjury." *Bulloch v. United States*, 721 F.2d 713, 718
> (10th Cir. 1983). Fraud upon the court refers only to
> "very unusual cases involving far more than an injury to
> a single litigant." 11 Charles A. Wright, Arthur R. Miller &
> Mary Kay Kane, Federal Practice and Procedure § 2870 at 415
> (1995) (internal quotation marks omitted).

To establish fraud on the court, the movant must show "a deliberate scheme to directly subvert the judicial process[.]" *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters*, 675 F.2d 1349, 1356 (4th Cir. 1982). Dr. Durant failed to establish such a deliberate scheme to directly subvert the judicial process.

An attorney's participation in knowingly presenting perjured testimony may in some instances present a case of fraud upon the court. *Baltia Air Lines, Inc.*, 98 F.3d at 643. However, there was no perjured testimony here: Sherman's testimony established that there was no deliberate attempt to mislead the court, and his failure to disclose the prior representation of Blackburne was at most negligence. Thus there was no fraud on the court. *See Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995) ("[A] 'fraud on the court' requires an intent to deceive or defraud the court[.]").

Furthermore, for there to have been a fraud upon the court, the court must have been deceived. *See Herring v. United States*, 424 F.3d 384, 386 (3d. Cir. 2005) (holding that that "the necessarily demanding standard for proof of fraud on the court" requires proof of "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself, and (4) in fact deceives the court"). *See also Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010) (explaining that fraud on the court only exists if the misconduct deceives the court); *Demjanjuk v.*

14

*Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1993) (holding that "only actions that actually subvert the judicial process can be the basis for upsetting otherwise settled decrees" on the basis of fraud on the court); *In re Old Carco LLC*, 423 B.R. 40, 52 (Bankr. S.D.N.Y. 2010) ("[T]he fraud, misrepresentation or conduct must have actually deceived the court.") (citing *United States v. Smiley*, 553 F.3d 1137, 1145 (8th Cir. 2009)); *Reinert v. Bould (In re Reinert)*, No. 14-02204-JAD, 2015 WL 1206714, at *9 (Bankr. W.D. Pa. Mar. 12, 2015) ("A key element of 'fraud on the court' is deception to the Court.").

Dr. Durant's *Motion to Vacate*, and the evidence presented at the hearing thereon, failed to demonstrate that Sherman's failure to disclose his and Tsikerdanos's past representation Blackburne, one of Trigee's creditors, deceived the court into authorizing the employment of both attorneys under 11 U.S.C. § 327(a).  As this court explained in *Trigee Found., Inc. v. Lerch, Early & Brewer, Chtd. (In re Trigee Found., Inc.)*, No. 16-10025, 2016 WL 5360572, at *10 (Bankr. D.D.C. Sept. 23, 2016),  the prior representation of Blackburne for the purpose of sending dunning letters did not establish an actual conflict of interest as to Trigee and the interests of the estate.  Dr. Durant's *Motion to Vacate* alleged no facts indicating, and Dr. Durant presented no evidence showing, that there was a conflict of interest that would have required the court to disapprove of the employment

under 11 U.S.C. § 327(a) had the prior representation of Blackburne had been disclosed.

If Blackburne had raised Rule 1.9 of the District of Columbia Rules of Professional Conduct when Trigee had sought to employ Lerch Early, pointing to its former relationship with Sherman and Triskerdanos, an issue would have arisen as to whether Rule 1.9 barred Trigee from employing Lerch Early.[4] However, the evidence presented failed to demonstrate that Rule 1.9, if it had been raised by Blackburne, would have in fact barred the representation.  There is no suggestion that Sherman and Tsikerdanos represented Blackburne against Trigee for any purposes other than sending the dunning letters.  Additionally, the information Blackburne disclosed to Tsikerdanos and Sherman appears to have been disclosed to Trigee in the dunning letters. Accordingly, Rule 1.9 does not appear to apply.  *See* D.C. Rules of Prof'l Conduct R. 1.9 cmt. (2010) ("Information that has been disclosed to . . . other parties adverse to the former client ordinarily will not be disqualifying.").

Moreover, if Rule 1.9 did apply, Blackburne appears to have waived it.  Blackburne, through its attorney, was well aware of

---

[4]  Rule 1.9 of the District of Columbia Rules of Professional Conduct states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."

Sherman's prior representation of Blackburne, but Blackburne did
not object to Lerch Early's representation of Trigee.
Accordingly, any bar under Rule 1.9 on Sherman's representation
of Trigee based on such prior representation of Blackburne
appears to have been waived.

In any event, whether Blackburne could have invoked Rule 1.9
to bar Lerch Early's representation of Trigee in the bankruptcy
proceedings is a separate question from whether Trigee's retainer
of Lerch Early could be authorized under § 327(a).  As required
by § 327(a), when Lerch Early's representation of Trigee was
approved by the court it neither held nor represented an interest
adverse to the estate.  In addition, the § 327(a) requirement of
disinterestedness was met despite the prior representation of
Blackburne.

Lerch Early and its attorneys, including Sherman and
Tsikerdanos, were also disinterested, under the definition
embodied in 11 U.S.C. § 101(14)(C), which requires that the
attorney "does not have an interest materially adverse to the
interest of the estate or of any class of creditors or equity
security holders, by reason of any direct or indirect
relationship to, connection with, or interest in, the debtor, or
for any other reason[.]"  First, Lerch Early and its attorneys
clearly held no interest materially adverse to Trigee and the
estate.  Second, Lerch Early cannot be viewed as having an

interest materially adverse to Blackburne such as not to be
disinterested under § 101(14)(C).  The requirement under 11
U.S.C. § 101(14)(C) that a professional not have an interest
adverse to a class of creditors implicates "only the personal
interests" of the professional in question, not the interests
that he is representing, and thus requires that the professional
actually "have" such an interest if he is to be treated as *not*
disinterested.  *See In re AroChem Corp.*, 176 F.3d 610, 629 (2d
Cir. 1999).[5]  Furthermore, Rule 1.9 protects a former client of
an attorney when that attorney represents a new client having an
interest adverse to the former client.  Here, Trigee was the new
client having an adverse interest.  That adverse interest of
Trigee is not an interest of Lerch Early.  Accordingly, the prior
representation of Blackburne did not result in Lerch Early
holding an interest adverse to Blackburne within the meaning of
§ 101(14)(C) and therefore did not impact Lerch Early's status as
a disinterested party.

Moreover, Lerch Early and its attorneys did not otherwise
hold an adverse interest to the estate that would have
disqualified the firm from representing Trigee in the bankruptcy
proceedings.  To hold an adverse interest to the estate means:

(1) to possess or assert any economic interest that
would tend to lessen the value of the bankruptcy estate

---

[5]  At that time, the relevant provision appeared in the
United States Code at 11 U.S.C. § 101(14)(E).

or that would create either an actual or potential
dispute in which the estate is a rival claimant; or
(2) to possess a predisposition under circumstances
that render such a bias against the estate.

*In re AroChem Corp.*, 176 F.3d at 623 (quoting *In re Roberts*, 46

B.R. 815, 827 (Bankr. D. Utah 1985), *aff'd in relevant part and*

*rev'd and remanded in part on other grounds*, 75 B.R. 402 (D. Utah

1987)).  A similar test would apply to the issue of whether a

professional seeking to represent a debtor holds an adverse

interest to a class of creditors.  Lerch Early held no such

adverse interest to Blackburne; it held no economic interest that

would give rise to a dispute with Blackburne regarding its

interests in the case, and it held no bias against Blackburne.

Because there was no actual conflict of interest as to

Trigee arising from the prior employment by Blackburne of two

Lerch Early employees, Sherman and Tsikerdanos, the prior

representation of Blackburne would not have been a basis for

disapproving the employment of the firm or the attorneys under

the provisions of § 327(a).  The court would have approved

Trigee's retainer of Lerch Early had the court known of the prior

representation, so the court was not deceived by Sherman's and

Lerch Early's failure to disclose the prior representation and

the elements of fraud upon the court for Fed. R. Civ. P. 60(d)(3)

purposes have not been proven.  Thus, if Dr. Durrant's *Motion to*

*Vacate* can be read as raising such an argument despite failing to

cite the proper Federal Rule of Civil Procedure, there was no

19

demonstrated fraud on the court to justify vacating the *Fee Order* on that basis.

## VII

### SHERMAN SHOULD HAVE AMENDED HIS 2014(a) STATEMENT AND HAS ALREADY BEEN ADMONISHED FOR FAILING TO DO SO

Although there was no fraud on the court in this case, the court was not barred from considering issuing sanctions against Sherman for his failure to amend his Rule 2014(a) verified statement when he learned of his prior connection to Blackburne. *See Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 302 (6th Cir. 2016) ("[T]he fraud-on-the-court doctrine deals with courts' inherent power to vacate their judgments, whereas this case involves a court's inherent power to sanction for misconduct in litigation.")  Pursuant to a lengthy hearing on an order to show cause, in which Trigee participated through counsel, the court has admonished Sherman as a sanction for his failing to amend his Rule 2014(a) statement to reflect his and Tsikerdanos's prior representation of Blackburne.

## VIII

### CONCLUSION

The court has already entered an order (Dkt. No. 541) denying Dr. Durant's *Motion*, as joined in by three other creditors, and this decision clarifies the reasons for having entered that order.

[Signed and dated above.]

Copies to: Recipients of e-notification of orders.

Nancy A. Durant, M.D.
925 Kensington Avenue,
Plainfield, NJ 07060-2619

Guy Durant
3410 10th Street, NE
Washington, DC 20017

Simpson Shaw
Shaw Electrical Service
5319 Redd Lane
Temple Hills MD 20748-3909

Russel D. Simmons, Principal
Community Development Concepts
1829 Upshur Street, NE
Washington, DC 20018